United States District Court

For the Northern District of California

1

2

3                                                    *E-FILED ON 4/27/06*

4

5

6

7                          NOT FOR CITATION

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11   MICHAEL PEKIN and AMANDA                No. C05-05402 HRL
     HERNANDEZ,
12                                           **ORDER GRANTING DEFENDANT'S**
              Plaintiff,                     **MOTION TO DISMISS WITH LEAVE**
13        v.                                 **TO AMEND**

14                                           **[Re: Docket No. 5]**

     COUNTY OF SAN BENITO and DOES 1-10,
15   inclusive,

16            Defendants.
                                        /
17

18        On April 11, 2006, this court heard the Fed.R.Civ.P. 12(b)(6) motion to dismiss filed by

19   defendant County of San Benito ("County").  Plaintiffs Michael Pekin and Amanda Hernandez

20   opposed the motion.  Upon consideration of the papers filed by the parties, as well as the

21   arguments of counsel, the court grants the motion with leave to amend.[1]

22                          **I.  BACKGROUND**

23        For purposes of resolving the instant motion, the court assumes the truth of the

24   following allegations:

25        Plaintiff Michael Pekin is an attorney.  Plaintiff Amanda Hernandez is a law school

26   graduate who works in Pekin's office as a paralegal.  According to the complaint, in December

27   2003, Pekin filed a lawsuit on behalf of a client against the County and Richard Scagliotti (a

28
     _____
     [1]      Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, all parties have expressly
     consented that all proceedings in this matter may be heard and finally adjudicated by the
     undersigned.

United States District Court

For the Northern District of California

1   member of the County's Board of Supervisors), alleging that they engaged in corruption.  That

2   action, *Monteon v. Scagliotti*, CU 03-00150 ("Monteon Action"), is still pending in the San

3   Benito County Superior Court.  Hernandez assisted Pekin in conducting that litigation.

4        Further, the complaint alleges that:

5   •        On December 17, 2004, the County District Attorney filed a civil lawsuit against

6             Pekin, Hernandez and Pekin's son (an attorney who also worked in Pekin's

7             office) for unfair business practices.  That lawsuit, which allegedly pertains to

8             plaintiffs' conduct in the Monteon Action, is still pending.

9   •        On February 22, 2005, the County District Attorney filed criminal charges

10            against Pekin arising out of his participation in the Monteon Action.  The

11            charges included:  (1) Conspiracy to Falsely Move or Maintain Any Suit, Action,

12            or Proceeding; (2) Conspiracy to Obstruct Justice or the Due Administration of

13            the Laws; (3) Preparing False Documentary Evidence; (4) Attempted

14            Subornation of Perjury; and (5) Attempting to Deceive the Court or Another

15            Party to a Lawsuit.  All of the criminal charges were later dismissed on June 20,

16            2005.

17  •        On April 26, 2005, the County District Attorney filed a single misdemeanor

18            charge against Hernandez for the unlicensed practice of law.  The charge, which

19            allegedly arose out of her participation in the Monteon Action, was dismissed by

20            the state court on September 1, 2005.

21       On December 29, 2005, plaintiffs filed the instant civil rights lawsuit against the County

22  under 42 U.S.C. § 1983.  The gravamen of the complaint is that the County engaged in a

23  campaign of harassment by encouraging the County's District Attorney to file criminal and civil

24  actions against plaintiffs in retaliation for the exercise of their First Amendment rights "to

25  access the courts and petition the government for redress of grievances, and exercise of freedom

26  of speech" in the Monteon Action.  (Complaint, ¶ 14).  Plaintiffs claim that they "have been

27  harmed in that [they] have incurred attorneys' fees, suffered humiliation, mental anguish, and

28  emotional and physical distress."  (Id. at ¶ 15).

1    The County now moves to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).  It

2    contends that the complaint fails to allege sufficient facts demonstrating that the County bears

3    any liability under 42 U.S.C. § 1983.  It argues that, in any event, dismissal is appropriate

4    because plaintiffs have failed to sufficiently allege any facts supporting a claim for retaliation

5    under the First Amendment.  In the alternative, the County moves for a more definite statement

6    pursuant to Fed.R.Civ.P. 12(e) or to strike portions of the complaint that it argues are irrelevant

7    pursuant to Fed.R.Civ.P. 12(f).

## II.  LEGAL STANDARD

9    A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests

10   the legal sufficiency of the claims in the complaint.  In such a motion, all material allegations in

11   the complaint must be taken as true and construed in the light most favorable to the claimant.

12   See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  "However, the court

13   is not required to accept legal conclusions cast in the form of factual allegations if those

14   conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness

15   Network, 18 F.3d 752, 754-55 (9th Cir. 1994).  Dismissal is appropriate only when it "'appears

16   beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

17   entitle him to relief.'" Balistreri, 901 F.2d at 699 (quoting Conley v. Gibson, 355 U.S. 41, 45-46

18   (1957)).  Ordinarily, a court may only look at the face of the complaint and documents attached

19   to the complaint in deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  See Hal Roach

20   Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

## III.  DISCUSSION

22   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:

23   (1) that a right secured by the Constitution or laws of the United States was violated and (2) that

24   the alleged violation was committed under the color of state law.  See West v. Atkins, 487 U.S.

25   42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

26

27

28

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

**A.      Local Government Liability Under 42 U.S.C. § 1983**

The County first argues that dismissal is warranted because the complaint does not contain sufficient facts showing that the alleged actions were made under color of state law.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).  However, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior.  See Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691; Fuller v. City of Oakland, 47 F.3d 1522, 1534 (9th Cir. 1995).  To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.  See Plumeau v. School Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

Liability based on a municipal policy may be satisfied one of three ways:  (1) by alleging and showing that a city or county employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity; (2) by establishing that the individual who committed the constitutional tort was an official with final policymaking authority; and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice made from among various alternatives, or (3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it. See Fuller, 47 F.3d at 1534; Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992), cert. denied, 510 U.S. 932 (1993).

In this case, plaintiffs argue that the County has a "custom, practice and policy of engaging in the retaliatory conduct" alleged to have been undertaken by members of its Board of Supervisors. (Complaint, ¶ 17). The complaint alleges that, for example:

4

United States District Court

For the Northern District of California

1

2

3

- Supervisor Richard Scagliotti contacted a witness, Mr. Valles, Jr., and arranged for him to speak to the County District Attorney Investigator Andy Simpson for the purpose of encouraging the County District Attorney to criminally prosecute Pekin and Hernandez.

4

5

- The County Board of Supervisors paid for outside counsel to assist in the criminal investigation and prosecution of plaintiffs and to assist in the Monteon Action.

6

7

8

- When Pekin was indicted by a grand jury, County Supervisor Bob Cruz stated that "justice was a long time coming," and when the indictment was later dismissed, he stated '[the prosecutor] put on a hell of a good case and the judge just threw it out.'  Supervisor Ruth Kessler is alleged to have said that "[the District Attorney] promised us [Board Members] he would prosecute Mike Pekin" (or words to that effect).

9

10

- The County's outside counsel in the Monteon Action sent documents to the County District Attorney to encourage the filing of criminal and civil actions against plaintiffs.

11    (Complaint at ¶ 8).

12         The County contends that plaintiffs will not be able to establish a claim for violation of

13    their civil rights because none of the alleged acts are, in and of themselves, actionable or even

14    improper.  Here, defendant points out that (1) Exhibit A to plaintiffs' complaint does not

15    suggest that "[t]he purpose of [the February 7, 2005 meeting between the County District

16    Attorney and Mr. Valles] was to encourage the San Benito County District Attorney to

17    criminally prosecute Pekin and Hernandez" as alleged; (2) the complaint acknowledges that the

18    County has the authority to hire private outside counsel; and (3) the complaint acknowledges

19    that the County's outside counsel provided documents to the District Attorney on her own

20    initiative without being asked by the District Attorney.  (Complaint, ¶ 8).  Even if the court

21    presumed that the complaint could be read as alleging that the County's outside counsel acted

22    "under color of state law," such an allegation certainly seems inconsistent with the allegation

23    that is actually made – i.e., that outside counsel acted on her own initiative.  Nevertheless,

24    insofar as the County contends that dismissal is warranted because the alleged acts themselves

25    may have been entirely proper, the court declines to do so.  Retaliation by a state actor for the

26    exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when

27    taken for different reasons, would have been proper.  Mt. Healthy City Bd. of Education v.

28    Doyle, 429 U.S. 274, 283-84 (1977).

United States District Court

For the Northern District of California

1    Defendant asserts that in order to survive dismissal, plaintiffs must "proffer[] . . . factual

2    evidence" to support their allegations.  (Reply at 3:23).  Here, the County argues that the

3    alleged acts are too random to prove the existence of any policy, custom or practice sufficient to

4    confer liability on the County.  See Brown, 520 U.S. at 404 ("[I]t is not enough for a § 1983

5    plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must

6    also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force'

7    behind the injury alleged.").  Whether plaintiffs will be able to prove their claims, however, is a

8    question for another day.  At the pleading stage, "'a claim of municipal liability under section

9    1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more

10   than a bare allegation that the individual officers' conduct conformed to official policy, custom,

11   or practice.'"  Galbraith v. County of Santa Clara, et al., 307 F.3d 1119, 1127 (9th Cir. 2002)

12   (quoting Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988) (internal

13   quotations omitted); accord Leatherman v. Tarrant County Narcotics Intelligence &

14   Coordination Unit, 507 U.S. 163, 168-69 (1993) (allegations of municipal liability are not

15   subject to a heightened pleading standard).

16       Based on the foregoing, the court finds that plaintiffs have sufficiently alleged municipal

17   liability under section 1983.

18   **B.    Plaintiffs' Claim for Retaliation Under the First Amendment**

19       Nevertheless, the County contends that the complaint fails to sufficiently allege the

20   predicate violation of their federally protected rights under the First Amendment.  Here, the

21   complaint asserts that through the allegedly retaliatory acts, the County has infringed plaintiffs'

22   right "to access the courts and petition the government for redress of grievances, and exercise of

23   freedom of speech."  (Complaint, ¶ 14).  However, at oral argument, plaintiffs clarified that they

24   are asserting a First Amendment right to "represent their clients."

25       Retaliation, though it is not expressly referred to in the Constitution, is actionable

26   because retaliatory actions may tend to chill individuals' exercise of constitutional rights.  See

27   Perry v. Sindermann, 408 U.S. 593, 597 (1972).  A claim under § 1983 for retaliation under the

28   First Amendment may be stated where a plaintiff alleges retaliation by state actors for the

6

United States District Court
For the Northern District of California

1  exercise of his First Amendment rights.  See Mt. Healthy City Bd. of Education, 429 U.S. at

2  283-84.  The plaintiff must show that the type of activity he was engaged in was protected by

3  the First Amendment and that the protected conduct was a substantial or motivating factor for

4  the alleged retaliatory acts.  See id. at 287.  As noted above, retaliation by a state actor for the

5  exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when

6  taken for different reasons, would have been proper.  See id. at 283-84.  A plaintiff need not

7  demonstrate that his speech actually was inhibited or suppressed, however.  The proper inquiry

8  is whether the official's acts would chill or silence a person of ordinary firmness from future

9  First Amendment activities.  See Mendocino Envtl. Ctr. v. Mendoncino County, 192 F.3d 1283,

10  1300 (9th Cir. 1999).

11       Plaintiffs assert that they have a First Amendment right to "represent their clients,"

12  relying heavily on NAACP v. Button, 371 U.S. 415 (1963), In Re Primus, 436 U.S. 412 (1978)

13  and First Defense Legal Aid v. City of Chicago, 209 F. Supp.2d 935 (N.D. Ill. 2002).  In

14  Button, the NAACP challenged certain Virginia statutes which prohibited the solicitation of any

15  legal or professional business.  The Supreme Court held that the statutes in question, as applied

16  to the activities of the NAACP, were unconstitutional insofar as they prevented that

17  organization's lawyers and members from advising others of their legal rights or appearing in

18  litigation funded by the NAACP.  Button, 371 U.S. at 428-29, 434.  In so holding, the Court

19  reasoned that in the context of the NAACP's objectives, litigation was employed, not as a

20  means of resolving private differences, but as a form of political expression and association to

21  achieve the organization's social aims of racial equality and to vindicate constitutional rights

22  through the courts.  Button, 371 U.S. at 429-30.

23       Similarly, in In Re Primus, the Supreme Court held that an attorney and member of the

24  ACLU could not be disciplined for offering free legal assistance when her actions were made to

25  express personal political beliefs and to advance the ACLU's civil-liberties objectives.  See

26  Primus, 436 U.S. at 434-435.  In so holding, it noted that "[f]or the ACLU, as for the NAACP,

27  'litigation is not a technique of resolving private differences'; it is 'a form of political

28

7

United States District Court

For the Northern District of California

1  expression' and 'political association.'" Primus, 436 U.S. at 428 (quoting Button, 371 U.S. at

2  429).

3          Likewise, in First Defense Legal Aid v. City of Chicago, 209 F. Supp.2d 935 (N.D. Ill.

4  2002), a non-profit legal aid organization and two of its attorneys sued the city of Chicago,

5  several police officers and the state's attorneys for, among other things, violation of their First

6  Amendment rights.  There, plaintiffs asserted that they had a First Amendment right to

7  represent clients being held and interrogated by the police.  In denying defendants' motion to

8  dismiss, the district court stated that "[j]ust as a client's 'right to hire and consult an attorney is

9  protected by the First Amendment's guarantee of freedom of speech, association, and petition,'

10  so too the attorney has a First Amendment right to associate with the attorney's clients to

11  further what First Defense describes as its 'organizational mission – the social goal of affording

12  protection to indigents in police custody.'" First Defense Legal Aid, 209 F. Supp.2d at 940

13  (citations omitted).

14          Taken together, Button, Primus and First Defense Legal Aid are cases which recognize

15  that collective activity undertaken to obtain meaningful access to the courts is a form of

16  political expression protected by the First Amendment.  None of these cases, however,

17  recognize a right of lawyers to simply represent clients in court.  Such rights (if any) of a non-

18  lawyer employee of an attorney, like Hernandez, under the facts and circumstances alleged here

19  seem even more dubious.  Plaintiffs are not aided by dicta in Sacher v. United States, 343 U.S. 1

20  (1952) where the Supreme Court observed that "it is the right of counsel for every litigant to

21  press his claim, even if it appears farfetched and untenable . . .." Sacher, 343 U.S. at 9.  Sacher

22  concerned the authority of a trial judge to impose punishment for contempt, and the import of

23  that case is that a trial judge properly may defer imposing punishment for contempt until the

24  close of trial.  See Sacher, 343 U.S. at 11.

25          While this court is not prepared to hold that attorneys retain no First Amendment rights

26  when representing clients in court, see, e.g., Canatella v. State of California, 304 F.3d 843, 854

27  (9th Cir. 2002) (concluding that an attorney had standing to challenge certain statutes and rules

28  of conduct because an attorney's First Amendment rights of expression are implicated by

8

United States District Court
For the Northern District of California

1    "push[ing] the envelope of zealous advocacy"), several opinions indicate that attorneys have no

2    personal right under the First Amendment to simply "represent their clients."  See, e.g.,

3    Mezibov v. Allen, 411 F.3d 712 (6th Cir. 2005) (concluding that an attorney did not engage in

4    free expression protected by the First Amendment when he filed motions and raised defenses in

5    court, and holding, as a matter of first impression, that an attorney retains no personal First

6    Amendment rights when representing his client in courtroom proceedings); Bd. of Education v.

7    Nyquist, 590 F.2d 1241 (2d Cir. 1979) (concluding that, in the absence of any showing that the

8    attorney's representation was necessary to facilitate a specific point of view in court, the First

9    Amendment did not protect the right of a particular attorney to represent the defendants in

10   court); Hinds v. Dallas Independent School Dist., 188 F. Supp.2d 664 (N.D. Tex. 2002)

11   (concluding that defendants' allegedly retaliatory lawsuit did not infringe the attorney-

12   plaintiff's First Amendment rights of free speech or access to the courts).

13          Accordingly, the County's motion to dismiss will be granted.  However, plaintiffs will

14   be given leave to amend.

### IV.  ORDER

16          Based on the foregoing, IT IS ORDERED THAT the County's motion to dismiss is

17   GRANTED WITH LEAVE TO AMEND.  Plaintiffs shall file their amended pleading within

18   ten days of the date of this order.  The court does not reach the County's alternative motions for

19   relief under Fed.R.Civ.P. 12(e) or Fed.R.Civ.P. 12(f).

20   Dated:   April 27, 2006

21   _____

22   HOWARD R. LLOYD
     UNITED STATES MAGISTRATE JUDGE

**United States District Court**

For the Northern District of California

1    **5:05-cv-5402 Notice will be electronically mailed to:**

2    William L Marder bill@paxton-obrien.com

3    Michael C. Serverian mserverian@rllss.com

4    **Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28