1

2

3                                                      *E-FILED ON 8/25/06*

4

5

6

7                                  NOT FOR CITATION

8                   IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                               SAN JOSE DIVISION

11  MICHAEL PEKIN and AMANDA              No. C05-05402 HRL
    HERNANDEZ,
12                                        **ORDER GRANTING IN PART AND
              Plaintiffs,                 DENYING IN PART DEFENDANT'S
13                                        MOTION TO DISMISS FIRST
       v.                                 AMENDED COMPLAINT**
14
    COUNTY OF SAN BENITO and DOES 1-10,
15  inclusive,                            **[Re:  Docket No. 24]**

16            Defendants.
                                      /
17

18        Defendant County of San Benito ("County") moves to dismiss the First Amended

19  Complaint.  Plaintiffs Michael Pekin and Amanda Hernandez oppose the motion.  Upon

20  consideration of the papers filed by the parties, as well as the arguments presented at the July

21  18, 2006 hearing, this court GRANTS the motion IN PART and DENIES the motion IN PART.[1]

22                                 **I.  BACKGROUND**

23        Plaintiff Michael Pekin is an attorney and a member of the California bar.  Plaintiff

24  Amanda Hernandez is now an attorney; however, during the time period encompassed by

25  plaintiffs' complaint, she was a law school graduate who worked as a paralegal in Pekin's

26  office.  On December 29, 2005, they brought this civil rights action under 42 U.S.C. § 1983,

27  seeking money damages and claiming that the County retaliated against them for exercising

28

        [1]     Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, all parties have expressly
    consented that all proceedings in this matter may be heard and finally adjudicated by the
    undersigned.

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1   their claimed First Amendment right to "represent their clients."  The County moved to dismiss

2   the complaint under Fed.R.Civ.P. 12(b)(6) on the grounds that the complaint failed to properly

3   assert a <u>Monell</u>[2] claim and did not allege facts establishing the violation of any constitutional

4   right.  This court concluded that, under liberal federal pleading standards, the complaint

5   sufficiently alleged municipal liability under section 1983.  It nevertheless agreed that attorneys

6   have no personal right under the First Amendment to simply "represent their clients," and it

7   followed, neither did paralegals.  Accordingly, the complaint was dismissed with leave to

8   amend.

9          In their First Amended Complaint ("FAC"), plaintiffs again assert claims for retaliation

10   for the exercise of their First Amendment rights, as well as for conspiracy to deprive them of

11   their constitutional rights under the First, Fourth and Fourteenth Amendments.[3]  For purposes of

12   a Fed.R.Civ.P. 12(b)(6) dismissal, the factual allegations of plaintiffs' FAC are assumed to be

13   true.  The FAC alleges as follows:

14          Since mid-2003, Pekin became concerned about what he perceived to be government

15   corruption in San Benito County – namely, that Richard Scagliotti (then a member of the

16   County Board of Supervisors) used his political office for personal financial gain and to harm

17   his business competitors.  Local business people allegedly also shared Pekin's concerns, but

18   feared retaliation if they spoke out.  Around mid-2003, a "citizen's group fighting corruption"

19   began meeting secretly to discuss these concerns.  (FAC at p. 6:12).  With money contributed

20   by the group, Pekin hired a private investigator, David Henderson, to look into the suspected

21   corruption.  Henderson later prepared a report which Pekin says confirmed his suspicions.

22          The FAC further alleges that by October 13, 2003, Pekin was convinced that litigation

23   was the only means available to the group to fight against the corruption; but the group

24   purportedly was unable to find any attorney willing to represent it in court because of a fear of

25   

26          [2]     <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658 (1978).

27          [3]     The FAC also included a claim for malicious prosecution.  However,
28   plaintiffs have withdrawn that claim as premature because the action upon which the claim is
    based is currently on appeal.  Accordingly, the County's motion to dismiss as to that claim is
    denied as moot.

retaliation.  Wanting to publicly expose the alleged government corruption, two members of the group (identified only by the pseudonyms "Benito Juarez" and "Pipila Guanajuato Guerrero") urged Pekin to file a motion to intervene in a lawsuit then pending against the County in the state Superior Court, <u>McGovern v. San Benito County</u>, Case No. CV 03-00103 ("McGovern Action").  To protect the identities of the citizens in the group, Pekin dubbed them "Los Valientes"; and, on October 14, 2003, he filed a motion on the group's behalf to intervene in the McGovern Action.  That motion was denied.

In December 2003, Pekin filed a taxpayer lawsuit on behalf of Juan Monteon against the County and Scagliotti entitled <u>Monteon v. Scagliotti</u>, Case No. CU 03-00150 ("Monteon Action").  That action is still pending in the San Benito County Superior Court.  According to the FAC, the Monteon complaint asserts many of the same allegations of corruption as those made by Los Valientes in their unsuccessful motion to intervene in the McGovern Action.

Meanwhile, plaintiff Hernandez graduated from law school in June 2003, passed the California bar exam that same summer, but was not "sworn in" to the bar that year.  After completing a one-year, out-of-state clerkship, she returned to California in October 2004 and began working for Pekin as a paralegal.  Plaintiffs allege that from the moment she began assisting Pekin in his "anti-corruption litigation," she "publicly and personally ascribed to the same concerns, beliefs, and political activities of Pekin designed to carry out the goals of fighting corruption of Supervisor Scagliotti and San Benito County."  (FAC at 3:26-4:2).  Both plaintiffs claim that they also "dispersed copies of the Henderson report and findings from the report as widely as circumstances permitted in an effort to create and maintain a publicly supported citizen's group to fight the . . . corruption . . . ."  (<u>Id</u>. at 4:13-15).

The FAC further alleges that on December 17, 2004, the County District Attorney filed a civil lawsuit against "'Los Valientes,' Pekin and Hernandez, along with Pekin's son (an attorney who also worked in the office)" for unfair business practices.  (FAC at 10:16-18).  That lawsuit, which allegedly pertains to the filing of the intervention motion in the McGovern Action and plaintiffs' conduct in the Monteon Action, is still pending.

United States District Court
For the Northern District of California

1    On February 22, 2005, the County District Attorney filed criminal charges against

2    Pekin, based on a Grand Jury indictment, for activities allegedly arising out of his participation

3    in the McGovern and Monteon Actions.  The charges included: (1) Conspiracy to Falsely Move

4    or Maintain Any Suit, Action, or Proceeding; (2) Conspiracy to Obstruct Justice or the Due

5    Administration of the Laws; (3) Preparing False Documentary Evidence; (4) Attempted

6    Subornation of Perjury; and (5) Attempting to Deceive the Court or Another Party to a Lawsuit.

7    All of the criminal charges were later dismissed on June 20, 2005.

8        On April 26, 2005, the County District Attorney filed a single misdemeanor charge

9    against Hernandez for the unlicensed practice of law.  The charge, which allegedly arose out of

10   her participation in the Monteon Action, was dismissed by the state court on September 1, 2005.

11       In the instant lawsuit, plaintiffs claim that the County engaged in a campaign of

12   harassment by encouraging the County's District Attorney to file criminal and civil actions

13   against them in retaliation for the exercise of their First Amendment rights "to access the courts

14   and petition the government for redress of grievances, and exercise of freedom of speech, and

15   freedom of association."  (FAC at 10:24-25).  Plaintiffs claim that they "have been harmed in

16   that [they] have incurred attorneys' fees, suffered humiliation, mental anguish, and emotional

17   and physical distress."  (Id. at 11:2-3).

18       Pursuant to Fed. R. Civ.P. 12(b)(6), the County now moves to dismiss the FAC for

19   failure to state a claim upon which relief can be granted.  It argues that the FAC still fails to

20   allege any facts demonstrating the violation of any constitutional rights.  Alternatively, it moves

21   for an order directing plaintiffs to provide a more definite statement pursuant to Fed.R.Civ.P.

22   12(e) or striking portions of the complaint under Fed.R.Civ.P. 12(f).

23                        **II.  LEGAL STANDARD**

24       A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests

25   the legal sufficiency of the claims in the complaint.  In such a motion, all material allegations in

26   the complaint must be taken as true and construed in the light most favorable to the claimant.

27   See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  "However, the court

28   is not required to accept legal conclusions cast in the form of factual allegations if those

4

conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). Dismissal is appropriate only when it "'appears beyond doubt that the plaintiff can prove no set of facts in support his claim which would entitle him to relief.'" Balistreri, 901 F.2d at 699 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Ordinarily, a court may only look at the face of the complaint and documents attached to the complaint in deciding a Fed. R. Civ. P. 12(b)(6) motion to dismiss. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents which are properly subject to judicial notice may be considered without converting the motion into one for summary judgment. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).[4]

### III.   DISCUSSION

**A.**     **Claim for Retaliation Under the First Amendment**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda County, 811 F.2d 1243, 1245 (9th Cir. 1987).

Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. See Perry v. Sindermann, 408 U.S. 593, 597 (1972). A claim under § 1983 for retaliation under the First Amendment may be stated where a plaintiff alleges retaliation by state actors for the exercise of his First Amendment rights. See Mt. Healthy City Bd. of Education v. Doyle, 429 U.S. 274, 283-84 (1977). The plaintiff must show that the type of activity he was engaged in was protected by the First Amendment and that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts. See id. at 287. Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when

---

[4]     The County's requests for judicial notice of records from the Monteon Action and the McGovern Action are granted insofar as they appear to present undisputed matters of public record which are relevant to the issues presently under consideration. FED.R.EVID. 201.

United States District Court

For the Northern District of California

1    taken for different reasons, would have been proper.  See id. at 283-84.  A plaintiff need not

2    demonstrate that his speech actually was inhibited or suppressed, however.  The proper inquiry

3    is whether the official's acts would chill or silence a person of ordinary firmness from future

4    First Amendment activities.  See Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283,

5    1300 (9th Cir. 1999).

6         In the instant case, the County contends that the FAC fails to allege facts demonstrating

7    that plaintiffs were engaged in any constitutionally protected activities.  Here, it asserts that,

8    under the guise of "Los Valientes," plaintiffs are merely re-asserting a right to simply

9    "represent their clients" – a claim that has already been rejected by this court.  For their part,

10   plaintiffs argue that the FAC alleges facts demonstrating that their participation – either as

11   litigants or as attorneys – in the underlying state court actions is encompassed by rights of

12   expression and association under the First Amendment.

13        The FAC does not allege any facts demonstrating that plaintiffs were litigants in the

14   underlying state court lawsuits, nor have plaintiffs shown that they could amend their complaint

15   to allege any such facts.  Neither plaintiff is identified as a party to the McGovern or Monteon

16   Actions.  To the contrary, the FAC indicates that the motion to intervene in the McGovern

17   Action was filed on behalf of Los Valientes and that the Monteon Action was filed on behalf of

18   Juan Monteon.  Moreover, as plaintiffs' counsel acknowledged at oral argument, the FAC

19   alleges that both the motion to intervene and the Monteon Action were filed while plaintiff

20   Hernandez was out-of-state and approximately one year before she even began working for

21   Pekin.  (See FAC at 3:19-23, 6:1-3, 7:14-19).  Further, the County says that Pekin cannot be a

22   member of the group because, according to his own court filings in the McGovern Action, Los

23   Valientes is comprised of San Benito County citizens, whereas the FAC acknowledges that

24   Pekin is not a County resident.  (See Serverian Reply Decl., Ex. A at p. 3; FAC at 7:7-10).

25        Plaintiffs nevertheless argue that their participation in the underlying state court

26   litigation constitutes an exercise of their First Amendment political expression and association

27   rights under NAACP v. Button, 371 U.S. 415 (1963) and its progeny.  As discussed in this

28   court's order granting the County's prior motion to dismiss, those cases recognize that

1    collective activity undertaken to obtain meaningful access to the courts is a form of political

2    expression and association protected by the First Amendment.  See NAACP v. Button, 371 U.S.

3    415 (1963); see also In re Primus, 436 U.S. 412 (1978); First Defense Legal Aid v. City of

4    Chicago, 209 F. Supp.2d 935 (N.D. Ill. 2002).

5         The County argues that the collective activity concerns at issue in the Button line of

6    cases are not implicated here because (1) Los Valientes is not comprised of socially

7    marginalized citizens; (2) judicial relief is not sought on Los Valientes' behalf in any event –

8    either in the instant action or in the Monteon Action; and (3) there is no "group" because

9    plaintiffs and Pekin's son claim to be the only publicly known members of Los Valientes.  As

10   such, the County argues that dismissal is warranted because this court has already ruled that

11   plaintiffs have no personal right to simply "represent their clients" in court.  See, e.g., Mezibov

12   v. Allen, 411 F.3d 712 (6th Cir. 2005) (concluding that an attorney did not engage in free

13   expression protected by the First Amendment when he filed motions and raised defenses in

14   court, and holding, as a matter of first impression, that an attorney retains no personal First

15   Amendment rights when representing his client in courtroom proceedings); Hinds v. Dallas

16   Independent School Dist., 188 F. Supp.2d 664 (N.D. Tex. 2002) (concluding that defendants'

17   allegedly retaliatory lawsuit did not infringe the attorney-plaintiff's First Amendment rights of

18   free speech or access to the courts, notwithstanding that the attorney filed the litigation to

19   express his own personal views).

20        The instant case does not fall squarely within the cases cited by either party.  On the one

21   hand, the allegations of the FAC indicate that, unlike the NAACP or the ACLU, Los Valientes

22   is a rather loosely organized group of County citizens.  Moreover, unlike Button and Primus,

23   the FAC indicates that "Los Valientes" was not and is not involved in the Monteon Action, and

24   the group's effort to intervene in the McGovern Action failed only because its motion was

25   denied by the court.  (See FAC at 6:1-3, 7:14-16).  Indeed, if these were the only allegations in

26   the FAC, defendant's motion to dismiss might indeed be well taken.

27        On the other hand, unlike those cases which rejected an attorney's First Amendment

28   right to simply represent clients, here, the FAC does contain allegations which – broadly

7

United States District Court

For the Northern District of California

1   construed under liberal federal pleading rules – support plaintiffs' contention that they were

2   punished for their activities as members or supporters of Los Valientes.[5]  This court is

3   unpersuaded that a group must be comprised of socially marginalized citizens before its rights

4   of association and expression will be recognized (as the County seems to suggest).  Although

5   the allegations of the FAC are not a model of clarity, at this stage of the litigation the court

6   views the allegations in the light most favorable to plaintiffs.  Here, the FAC alleges that

7   County officials conducted a "campaign to retaliate against Pekin and Hernandez for their

8   creation of and participation in 'Los Valientes.'"  (FAC at 8:2-3).  As discussed above, it is

9   unclear that Los Valientes has any connection with the Monteon Action under the facts as pled.

10  Nevertheless, for purposes of resolving the instant motion, the court finds that plaintiffs' claims

11  that they are being unjustifiably punished for activities connected with the group are supported

12  by the allegation suggesting (albeit in very vague fashion) that the County's civil suit was

13  brought against "Los Valientes."  (See FAC at 10:16-18).  While the County contends, in

14  essence, that there is no "group" because its known membership is essentially limited to

15  Hernandez and Pekin's son, the FAC contains allegations indicating that there are a number of

16  other (albeit currently anonymous) members of Los Valientes.  (See id. at 4:22-23, 5:3-4; 6:26-

17  7:3).  Whether plaintiffs will succeed in establishing their claims remains to be seen.  Taking

18  these allegations as true (as is required on the instant motion), this court concludes that

19  dismissal is not appropriate as to plaintiffs' claims for retaliation in violation of their claimed

20  First Amendment rights to freedom of expression and association.

21         The County argues that the FAC nevertheless is deficient because it does not contain

22  specific allegations that plaintiffs' activities were actually suppressed or that a person of

23  ordinary firmness would have been chilled by the alleged retaliatory conduct.  However, as

24  noted above, and as the County acknowledges in its own moving papers, plaintiffs are not

25  obliged to show that their activities were in fact suppressed to state a claim for retaliation.  See

26

27

28         [5]     The FAC is a departure from the original complaint, which merely alleged
    that plaintiffs litigated the Monteon Action on behalf of a client.

United States District Court

For the Northern District of California

1   Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d at 1300.  In any event, the court finds

2   that the complaint meets the liberal federal notice pleading standards under Fed.R.Civ.P. 8.

3          However, the court agrees that plaintiffs have not, and cannot, allege facts

4   demonstrating any violation of an underlying First Amendment right of access or petition.  The

5   Ninth Circuit apparently has not resolved whether it is unconstitutional to retaliate against an

6   individual who already has fully accessed the courts.  See Lytle v. Wondrash, 182 F.3d 1083,

7   1087, 1089 (9th Cir. 1999) (granting qualified immunity on question whether retaliation which

8   occurred after the plaintiff filed a complaint, litigated her claim, and won her case was

9   unconstitutional).  However, it seems that to state a claim based on a denial of access to the

10  courts, plaintiffs must allege facts demonstrating that they suffered an actual injury by being

11  shut out of court.  See Christopher v. Harbury, 536 U.S. 403, 415 (2002).  Here, plaintiffs have

12  not alleged that they were precluded from litigating their views in court or from expressing their

13  views elsewhere.  Nor have they alleged any facts indicating that they were otherwise barred by

14  virtue of any County action.  Indeed, the FAC indicates that they continue to prosecute the

15  Monteon Action and that they were unable to proceed in the McGovern Action only because the

16  motion to intervene was denied.  (See FAC 6:1; 7:20).

17  **B.     Plaintiffs' Conspiracy Claim**

18         The FAC alleges that the County conspired with county officials and others to deprive

19  plaintiffs of their rights under the First, Fourth and Fourteenth Amendments.  As discussed

20  above, the court finds that plaintiffs have, under liberal pleading standards, sufficiently alleged

21  a claim for violation of their claimed First Amendment rights of expression and association.

22  Accordingly, their conspiracy claim survives insofar as it is based upon the alleged violation of

23  these claimed rights.

24         However, the court agrees that plaintiffs have not alleged any facts demonstrating a

25  violation of their Fourth and Fourteenth Amendment rights.  Nor is it apparent that such claims

26  could be asserted by amendment.  Accordingly, the County's motion to dismiss is granted

27  without leave to amend as to plaintiffs' conspiracy claim to the extent that plaintiffs claim a

28  violation of their rights under the Fourth and Fourteenth Amendments.

**United States District Court**
For the Northern District of California

**C.    The County's Alternate Motions Under Fed.R.Civ.P. 12(e) and 12(f)**

The County alternatively moves for an order compelling plaintiffs to provide a more definite statement pursuant to Fed.R.Civ.P. 12(e) or for an order striking portions of the complaint pursuant to Fed.R.Civ.P. 12(f).  Where a pleading "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  FED.R.CIV.P. 12(e).  Such a motion "shall point out the defects complained of and the details desired."  Id.  In addition, the court may strike "from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter."  FED.R.CIV.P. 12(f).

Here, the County argues that the FAC is obscure in that it is unable to distinguish Hernandez's claims from those of Pekin.  Indeed, plaintiffs' counsel readily acknowledged at oral argument that the underlying allegations are convoluted.  Nevertheless, the court concludes that the complaint satisfies liberal federal notice pleading standards under Fed.R.Civ.P. 8.  The parties will have an opportunity in discovery to seek further detail or clarification as to the allegations.  Accordingly, the County's alternate motions under Fed.R.Civ.P 12(e) and 12(f) are denied.

**IV.  ORDER**

Based on the foregoing, IT IS ORDERED THAT the County's motion to dismiss is GRANTED IN PART AND DENIED IN PART as follows:

1.     With respect to plaintiffs' claim for relief for retaliation, the County's motion is DENIED insofar as plaintiffs claim a violation of their rights to freedom of expression and association.  The motion is GRANTED to the extent plaintiffs claim a violation of their First Amendment rights of access or petition.

2.     With respect to plaintiffs' claim for conspiracy, the County's motion is DENIED to the extent plaintiffs' claim is based upon the alleged deprivation of their First Amendment rights of expression and association.  The motion is GRANTED to the extent plaintiffs claim a violation of their rights under the Fourth and Fourteenth Amendments.

1    3.    The County's alternate motions under Fed. R. Civ. P. 12(e) and Fed. R. Civ. P.

2    12(f) are DENIED.

3

4    Dated:    August 25, 2006

5

6    HOWARD R. LLOYD
     UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

11

1

**5:05-cv-5402 Notice will be electronically mailed to:**

2

William L Marder bill@polarislawgroup.com

3

Michael C. Serverian mserverian@rllss.com

4

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California